FILED

FRANCIS ANDERSON
    v.
DAVID BUDLONG

2003 OCT 14 P 3:56

3:02CV1165(JGM)

FRANCIS ANDERSON
    v.
EDWARD BLANCHETTE

3:02CV1181(JGM)

OCTOBER 8th 2003

## MOTION TO RECONSIDER U.S. MAGISTRATE JUDGE JOAN GLAZER MARGOLIS DECISION

The plaintiff is asking this court to reconsider, because the plaintiff would never receive mental health treatment at this institution, and the defendants MISLEAD the court into not giving the plaintiff medical treatment, and the court should have came up with a treatment plain for mental health and medical treatment, because United States District Judge ROBERT CHATIGNY order that I go to (CVH) mental facility (3:00 1CR265)DJS) when I go home.

FRANCIS ANDERSON

## Conclusion

FOR the foregoing reasons, the court should come-up with a treatment plain for mental health and medical treatment.

*Francis Anderson*

## Certification

This is to certify that the within a foregoing has been delivered to the following this 8th day of Oct 2003 to:

M. Lanem
110 Sherman Street
Hartford, Ct 06105

FRANCIS ANDERSON
# 139042
287 Bilton Rd
Somers, Ct 06071

(2)    Mr. Anderson objects to the suggestion in ¶66 that an upward departure from career offender guidelines, based on a perceived inadequacy of his criminal history category, might be appropriate. The guidelines recommended by the probation officer are already based upon a significant eight level enhancement, from level 6 to level 14, pursuant to § 4B1.1 of the guidelines. In promulgating this career offender guideline, the Commission fully considered the factors referred to in ¶66 and counsel is aware of no authority that would permit the court to depart upward from the designated sentencing range merely on the basis of recidivism.

(3)    Mr. Anderson also objects to the failure to include in the PSR any mention of the obvious bases for a downward departure:

A. **Diminished Capacity, § 5K2.13.** Mr. Anderson suffers from a significantly reduced mental capacity, which had a direct causal relationship to his commission of the offense. A "significantly reduced mental capacity" includes the impaired ability to control behavior, even if the defendant knows the behavior is wrongful. Application Note 1. Two psychiatrists who have evaluated Mr. Anderson most recently, Drs. Grayson and Goodwin, agree that he suffers from an impulse control disorder, a recognized mental defect. Doctor Grayson, in his May 3, 2000 report, indicated at page 12:

> In my opinion, Francis Anderson's mental disorders and defects have not risen to the level where they have made him unable to appreciate the wrongfulness of his behavior or prevented him from conforming his behavior to the expectations of the law. However, in my opinion, his impulse control disorder, ADHD[1] and limited intellectual capacity **have made it difficult for him to conform his behavior to the expectations of the law.**

Thus, Dr. Grayson found that while Anderson's mental illness and defects do not rise to the level of legal insanity, they clearly impair his ability to conform his behavior to the law. This diagnosis presents a classic case of diminished capacity in the volitional sense, which would clearly warrant a departure[2].

---

[1] Attention Deficit/Hyperactivity Disorder - predominantly hyperactive impulsive type (Report, p.12).

[2] Mr. Anderson's offense involved neither actual violence nor a serious threat of violence. Rather, it was merely an emotional response involving little or no deliberation. PSR, ¶15.

Dr. Goodwin agrees with the diagnosis of Impulse Control Disorder and suggested a regimen of medications including mood stabilizers, anti-depression medication and a tranquilizer to treat possible thought disorder. Thus, Dr. Goodwin supports the finding that Anderson suffers from diminished capacity within the meaning of § 5K2.13.

B. **Extreme Childhood Abuse.** The extraordinary physical and emotional abuse that Anderson suffered as a child provides a related, but somewhat distinct, basis for a departure. See United States v. Rivera, 192 F.3d 81, 83-86 (2d Cir. 1999) (In extraordinary circumstances, a district court maintains discretion to depart on the basis that extreme childhood abuse caused mental and emotional conditions that contributed to the defendant's commission of the offense). The abuse Anderson suffered can easily be classified as "extreme". He was abandoned by his father at an early age and suffered constant torment from his mother throughout his childhood. As a young boy he was confounded by conflicting signals ("one day she's whipping my ass and then she wants to be lovey-dovey") and outright rejection ("she would say hateful things like I should never come home"). This emotional abuse was supplemented by virtually constant physical abuse. ("She would beat me with extension cords, sticks, shoes, whatever she got her hands on"). In light of this background, Dr. Grayson noted:

> Francis Anderson apparently has had an emotionally deprived and somewhat abusive background. Limited intellectual capacity, pervasive learning disabilities as well as apparent ADHD seemingly led to problems relating to peers, teachers and authority figures in general. A conduct disorder evolved into an extensive antisocial history associated with an impulse control disorder and some drug abuse. To date, his pattern of adjustment has not changed. Report, p.11.

Thus, Dr. Grayson is of the opinion that the extreme abuse Anderson suffered as a child caused the mental and emotional difficulties which, in turn, led to the commission of his various criminal offenses.

C. **Less Than Minimal Planning.** In United States v. Jagmohan, 909 F.2d 61 (2d Cir. 1990), the Court approved a downward departure because the defendant's manner of committing the offense demonstrated an utter lack of sophistication not adequately considered in the Guidelines. In Jagmohan, the lack of sophistication was demonstrated by the defendant's paying a bribe with a personal check. Mr. Anderson's conduct demonstrates a similar, if not more egregious, lack of sophistication. The letter that he sent to Ms. Birch contained not only his name and signature, but also his inmate number and return address. Moreover, he included with his letter a copy of the letter Ms. Birch had

sent to him a few days earlier. This "unusually unsurreptitious" manner of committing the offense, as in Jagmohan, constitutes a mitigating factor not adequately considered in the Guidelines and, either by itself or in conjunction with the other factors mentioned above, clearly warrants a downward departure.

   I would be pleased to discuss these objections with you at your convenience. Please feel free to call.

              Very truly yours,

              Thomas G. Dennis
              Federal Defender

TGD/aw

cc: Anastasia M. Enos, AUSA

-4-

# Beck & Eldergill, P.C.

**Attorneys At Law**

447 CENTER STREET, MANCHESTER, CONNECTICUT 06040  PHONE (860) 646-5606
COVENTRY (860) 742-0882
HARTFORD (860) 522-5606
FAX (860) 646-0054

BRUCE S. BECK
KATHLEEN ELDERGILL
KENNETH I. FRIEDMAN
MARC P. MERCIER
FATIMA T. LOBO
DAVID R. KRITZMAN
MATTHEW R. POTTER
DEREK V. OATIS
MARIA C. MONICK

October 1, 2003

Francis Anderson
Inmate Number 139-042
Northern Correctional Institution
287 Bilton Road
Somers, CT 06071

**Re: Case No. 3:02 CV1165(RNC) (JGM)**

Dear Mr. Anderson:

Enclosed is Magistrate Margolis' recommended ruling in your case. It is unlikely that Judge Chatigny will overrule this decision, since it depends entirely on the magistrate's view of the facts.

While it is disappointing to see that she refused to continue your medication for Hepatitis C, she has issued some strong words concerning the need for mental health treatment on your part. Perhaps you can use this information to pursue your legal claims in this regard. For that reason, I have sent a copy of the enclosed decision to Inmates Legal Assistance.

Sincerely,

Kathleen Eldergill

KE:jmj
encl.
Probono\Anderson\And100103.ltr